ST. LOUIS & S. F. R. CO. v. COX.

(Court of Civil Appeals of Texas. Dallas. June 21, 1913. On Rehearing, Oct. 18, 1913.)

1. MASTER AND SERVANT (§ 256*)—INJURIES TO SERVANT — PETITION — ALLEGATION OF LAW GOVERNING ACTION.

Where a petition for personal injuries received by a railroad employé in Oklahoma alleged a good cause of action under the laws of Texas, it need not specify whether the plaintiff claims the right to recover under the laws of Texas, of Oklahoma, or of the United States; but, if the rights of the plaintiff are in any way affected by the laws of Oklahoma or of the United States, the defendant should plead and prove such fact.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–812, 815; Dec. Dig. § 256.*]

2. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT — INSTRUCTIONS — METHODS OF WORK.

In an action for injuries received by a railroad freight handler, who was directed by a checking clerk to unload his truck in a certain way, an instruction that it was the duty of the company to exercise ordinary care to furnish the plaintiff with reasonably safe means and manner in which to perform his work is not erroneous as requiring the company to prescribe rules and regulations for the doing of

such work but refers to the method of unloading the truck as directed by the clerk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

3. TRIAL (§ 296*) — HARMLESS ERROR — INSTRUCTION CURED BY OTHER INSTRUCTIONS.

If the instruction was erroneous, it was harmless where it was followed by a charge correctly applying the law to the facts.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296;* Master and Servant, Cent. Dig. § 1208.]

4. MASTER AND SERVANT (§ 189*)—INJURIES TO SERVANT—NEGLIGENCE OF FELLOW SERVANT — PERSON ENGAGED IN SUPERINTENDENCE.

A railroad is not liable for injuries to a freight handler caused by the negligence of the clerk who checked the freight and directed its placement in the warehouse, and who had the right to select the manner in which the truck should be unloaded, but who had no power to employ or discharge workmen, since the clerk was a fellow servant and not a vice principal of the freight handler.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by S. E. Cox against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

Andrews, Ball & Streetman, of Ft. Worth, and Head, Smith, Hare, Maxey & Head, of Sherman, for appellant. Randell & Randell and Jones & Hassell, all of Sherman, for appellee.

RAINEY, C. J. This suit was brought by appellee against appellant to recover damages for personal injuries sustained by him while engaged as a trucker in appellant's service at Hugo, Okl. Appellant answered by general and special exceptions, general denial, contributory negligence, and that the cause of action was governed either by the laws of Oklahoma or the federal Employers' Liability Act, and that under either of said laws plaintiff assumed the risk of injury from the manner in which the work was being done. A trial resulted in a verdict and judgment for plaintiff, and defendant appealed.

Conclusions of Fact.

Appellee was in the employ of appellant at Hugo, Okl., as a trucker and had worked as a trucker for 14 months. When hurt he was trucking freight from a car on the track into the warehouse of the railway company. He testified: "I was transferring freight from one car to another and from cars into the freight depot at Hugo. They had a freight house there where they placed freight that was brought into Hugo for merchants and other people there. Every day that I worked I had something to do with taking freight

into that house. The freight was trucked on two-wheel trucks. We would roll it in there on the trucks. We had to unload in the house to keep the stuff in station order. Every man's shipment was piled in one pile separate. That was unloaded under the direction of Mr. Reams. As well as I remember it was between 2 and 3 o'clock in the afternoon of Thursday, August 11, 1910, that I was injured. Just before I was hurt I rolled a load of paper in the house for the Husonian Publishing Company—press paper. They were rolls of paper and weighed 110 pounds to the roll. I had four rolls on my truck. It seems to me like Kiser Laddie loaded that at the car. I had nothing to do with the loading of it. I had to carry it into the house and, under the direction of Reams, unload it. There were four rolls of 110 pounds each, which would be 440 pounds on the truck. When I got that loaded truck into the house, I rolled it up by the side of the paper in the same shipment. They were stacked something like 4 or 4½ feet high. Then I started to stand my trucks up in order to let the paper dump on the floor in front of the trucks. When I had hold of the two handles of the truck, I would be facing the paper; and I was going to dump that over on the floor, but I didn't do that because Mr. Reams instructed me not to do it. Mr. Reams says, 'Back your truck up, Sam, and let the handles down.' My name is Sam Cox. He says, 'We will unload from the trucks;' and I says, 'Mr. Reams, the truck will dump;' and he says, 'They won't do anything of the kind.' He says, 'Back up and let them down and put your foot on the truck handle and we will unload from the truck.' He and I got hold of the first bundle of paper and gave it a swing and put it on top of the stack. I got hold of one end of the roll of paper, which was something like three feet long, and he got hold of the other end, and we swung together and swung it up on the pile of paper. At that time I was standing like he told me; standing on my left foot with my right foot straddle of the truck handle. The instep of my foot was balanced on the truck handle. As I reached to get the end of the next bundle, he had hold and was gone with the paper before I could get sufficient hold to come up with it. When I reached to get the end of the second bundle, I didn't get sufficient hold to hold it until he had got a good hold and swung before I was ready. I had as far again to swing my end as he did his in order to put it on there like the other paper was stacked, and I never got a hold on it that I could hold. When he swung I didn't have sufficient hold to hold the paper, and the result was it jerked me off of my balance, pulled my foot off of the truck handle, and the truck dumped and the handle of the truck hit me in the breast."

[1] The second assignment complains of the court in not sustaining exception No. 4,

which is as follows: "Defendant specially excepts to plaintiff's petition because the same does not specify whether plaintiff is seeking to recover under the laws of the state of Texas, the laws of the state of Oklahoma, or an act of the Congress of the United States." There was no error in overruling said demurrer.

The petition set up a good cause of action under the laws of this state. If the rights of plaintiff were in any way affected by the laws of Oklahoma or by the federal Employers' Liability Act, it was appellant's place to plead and prove such fact and the law if it wanted the benefit thereof. Railway Company v. Neaves, 127 S. W. 1091; Railway Company v. Seale, 148 S. W. 1099.

[2, 3] The third assignment complains of the court's giving the following charge: "It was the duty of defendant to exercise ordinary care to furnish plaintiff with reasonably safe means and manner in which to perform his work so that such work could be performed with reasonable safety to himself." The proposition made thereunder is: "A railroad is under no obligation to provide rules and the manner of doing the work where the work in which the employé is engaged is not complex and attended with dangers from the operations of others, and no such obligation exists in a case of a trucker removing rolls of paper from a truck to piles in its warehouse." We do not think the charge subject to the criticism urged against it. It does not relate to the making of rules by the company for the handling of freight but has reference to the methods then pursued by Reams in unloading the trucks at the time appellee was injured, as shown by appellee's plea. The charge was a statement of an abstract principle of law which was followed by a charge correctly applying the law to the facts upon which a recovery was sought; and, if the fifth paragraph of the charge was error, it could not have misled the jury in their verdict. Railway Company v. Wright, 62 Tex. 515.

[4] The fourth and ninth assignments complain of the sixth paragraph of the court's charge, which are:

(4) "Now bearing in mind the foregoing instructions, if you believe from the evidence that on the 11th day of August, 1910, the occasion in question, one S. Reams was in the employ of defendant as check clerk for freight in defendant's freight warehouse in the town of Hugo, Okl., and that as such check clerk he had the authority to direct plaintiff in the placing of freight and in the manner in which his truck should be unloaded; and if you further believe from the evidence that on said occasion plaintiff trucked into said warehouse a load of four bundles of paper to be unloaded and placed in position in said warehouse; and if you further believe from the evidence that said Reams directed plaintiff to let the handles of the truck rest on the floor of said warehouse and to

hold said handles down by plaintiff placing his foot on same that said truck be unloaded in said position; and if you further believe from the evidence that it was the duty of plaintiff to do said work in the manner so directed by said Reams, if you find said Reams did so direct same; and if you further believe from the evidence that in unloading one of the bundles from said truck said handles, without fault of plaintiff, were caused suddenly to fly up and strike plaintiff in the breast and thereby injure him; and if you further believe from the evidence that said Reams was guilty of negligence in directing said trucks to be unloaded in said manner, if you find from the evidence he did direct the same, and that such negligence was the proximate cause of plaintiff's said injury, if any—you will find for plaintiff and assess his damages as hereinafter directed."

(9) "Or if you believe from the evidence that on said occasion the handles of said truck were caused to rest on the floor and plaintiff placed his foot on same, either with or without the direction of said Reams, and plaintiff and the said Reams began the work of unloading same in such position; and if you further believe from the evidence that in unloading one of the bundles of paper from said truck said Reams swung or jerked the end of a bundle of paper held by him before, in the exercise of ordinary care, it was reasonably probable to the said Reams that said Cox was in a position and ready to make said swing of said bundle in its place; and if you further believe from the evidence that when the said Reams jerked or moved his said end of paper under such conditions, if you find he did jerk and move same under such conditions, plaintiff's foot was caused thereby to release the handles of said truck and the same suddenly flew up and struck him in the breast and thereby injured him; and if you further believe from the evidence that such conduct of said Reams in so moving his said end of paper, if you find he did move same, was negligence, and that such negligence, if any, was the direct and proximate cause of plaintiff's said injuries, if any—then in either of the above-enumerated events you will find for plaintiff unless you should find for defendant under other instructions given you."

It is urged that appellee was an experienced man of mature years; that the dangers incident to doing the work were open and obvious, and he assumed the risk of doing the work the way he did; and that Reams and appellee were fellow servants and appellant is not liable for the negligence of one to the other.

The paragraph of the charge here complained of was evidently based upon the theory that Reams, by reason of his authority to control appellee as to his work, was a vice principal of appellant, and if appellee in unloading the paper acted as directed by Reams he could recover. Reams' duty was to check freight and direct its placement as it was carried into the warehouse, but he had no power to employ or discharge workmen, and, if he was in any way negligent in conduct or instructions to appellee which induced appellee to act as he did in unloading the truck, appellant is not responsible therefor, as Reams was not a vice principal of appellant but a fellow servant of appellee. Lantry-Sharpe Contracting Co. v. McCracken, 150 S. W. 1156; Railway Company v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181.

Appellee places his right to recover upon the claim that Reams was negligent in his method of unloading the truck, which he followed. If Reams was negligent, he being a fellow servant, appellee was not bound to follow the instructions of Reams, and he assumed the consequences; at least the appellant is not liable under the circumstances. Traction Company v. De Rodriguez, 77 S. W. 420; Railway Company v. Miller, 36 Tex. Civ. App. 240, 81 S. W. 535; Haywood v. Railway Company, 38 Tex. Civ. App. 101, 85 S. W. 433.

Appellee was an experienced trucker. The truck was an ordinary one in use. There was nothing complicated about it, and he protested with Reams about unloading in that way, knowing that it would dump as it did. The manner of doing the work caused his foot to slip, unloosing the handles, which from the law of gravitation flew up and injured appellee. His injury resulted from an unfortunate accident for which he must suffer the consequences, as appellant, under all the circumstances shown by the evidence, is not liable.

As the case seems to be fully developed, the judgment is reversed and here rendered for appellant.

### On Rehearing.

At the request of appellee we find the additional conclusions of fact, to wit:

"(1) That, in unloading the second bundle of paper on the occasion in question, plaintiff's foot was caused to release the trucks by reason of Reams' swinging his end of said bundle before plaintiff was ready to swing and before it reasonably appeared to Reams that plaintiff was ready to make the swing, and that in so swinging his end of said bundle Reams was guilty of negligence which caused or concurred in causing plaintiff's injury.

"(2) That the witness Reams, in the warehouse where the freight was being handled, had the power to select the method and to direct plaintiff in the manner in which the truck should be unloaded.

"(3) That Reams was negligent in directing the bundles of paper to be unloaded in the manner in which he directed said work to be done."