## MACKAY TELEGRAPH–CABLE CO. v. ARMSTRONG.  (No. 6742.)

(Court of Civil Appeals of Texas. San Antonio. April 12, 1922. Rehearing Denied May 17, 1922.)

**1. Master and servant ⬤⟹155(1)—Warning of patent danger unnecessary.**

It is only in cases where the knowledge of the servant is equal to that of the master, and the danger is open and patent, that the master will be absolved from charge of negligence in not warning the servant.

**2. Master and servant ⬤⟹153(3), 163(1)—Employer held negligent as to inexperienced laborer lifting without sufficient help.**

Where plaintiff, an inexperienced laborer, was without opportunity to test the weight of a box of iron bolts which crushed his strength and fell when he and his companion attempted to lift it down from a freight car under the direction of their foreman, who told them they could handle it, defendant was guilty of negligence in not providing sufficient men and in not warning plaintiff of the danger.

**3. Trial ⬤⟹252(1)—Refusal of charge not sustained by evidence not error.**

The refusal of a charge based on facts not sustained by evidence was not error.

**4. Trial ⬤⟹362—Changing jury's answer to issue to conform to intention not error.**

In an action for injury caused by the falling of a heavy box while being unloaded from a freight car, where the intention of the jury was to find for plaintiff on an issue as to whether the danger of unloading of the box was so obvious and apparent that a person of ordinary prudence would not have undertaken to unload it in the manner plaintiff did, but through misunderstanding the issue was answered "No," calling attention to the issue by the court and correcting it to conform to the intention of the jury was not error.

**5. Trial ⬤⟹339(2)—Informal or defective verdicts reformed at bar.**

Under Vernon Sayles' Ann. Civ. St. 1914, art. 1980, if a verdict is informal or defective, the court may direct it to be reformed at bar without sending the jury back to their room.

**6. Damages ⬤⟹206(7)—Refusal of plaintiff to take laughing gas to have injury examined before jury not error.**

In personal injury action, the court properly refused to compel plaintiff at trial to be put under the influence of laughing gas to be examined as to his injury by a physician testifying for defendant.

**7. Damages ⬤⟹30—Elements of damages for personal injury stated.**

In a personal injury action, where the mental anguish and bodily suffering of plaintiff were shown to have been great, they were matters to be considered as well as the permanency of the injury and the impaired earning capacity of plaintiff.

**8. Damages ⬤⟹132(6)—$2,500 for injury to knee held not excessive.**

A verdict for $2,500 for injury to knee *held* not excessive; there being testimony that the leg would never be normal again.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Action by Young G. Armstrong against the Mackay Telegraph-Cable Company. From judgment for plaintiff, defendant appeals. Affirmed.

Spence, Haven & Smithdeal, of Dallas, for appellant.

Walker & Baker, of Cleburne, for appellee.

FLY, C. J.  This is a suit by appellee to recover of appellant damages alleged to have accrued by reason of personal injuries inflicted upon appellee through the negligence of appellant. The cause was submitted through special issues to a jury, and upon the answers thereto judgment was rendered in favor of appellee for the sum of $2,500.

The facts show that appellee was a laborer who was employed by appellant to assist in unloading a car of material to be used in building telegraph lines. He was employed by J. H. Cash, a foreman in the employ of appellant, and who, as a vice principal, had charge of the laborers engaged in unloading the car. Appellee was an inexperienced day-laborer, and, being under the direct control and authority of J. H. Cash, who had employed him, he relied upon his knowledge and instructions. Cash had three men, Sojourney, McDonald, and appellee, to unload the car, and he placed Sojourney in the car to bring the material to the door of the car where appellee and McDonald, who were on the ground, would lift it down and carry it to a place of deposit. In order to reach the boxes and sack containing the material, appellee, who was about 5 feet 8½ inches in height, was compelled to raise his hands to about the level of his chin to get hold of the material at or near the door. They first unloaded sacks filled with wooden pins, then iron washers in sacks, then iron braces in bundles weighing from 50 to 70 pounds, and the next were three small boxes, which were carried by appellee and McDon-

ald, one on either side to the pile of material. The fourth and last box was longer than the other three. It was so heavy that appellee was unable to hold it, and it fell and struck him on the leg, threw him under the car, and jammed his leg against the truss rods. Cash was standing by while the car was being unloaded and told appellee and McDonald that the box was a little longer than the others, but they could handle it. Appellee relied on what he said and endeavored to lift it down, but it was too heavy for his strength. He had no opportunity to lift the box and test its weight, but was compelled to rely altogether on the statement of Cash. The box was loaded with iron bolts. Appellee was permanently injured in his knee and suffered great pain from it.

[1, 2] The first, second, and third assignments of error assail the verdict and judgment on the ground that no negligence was shown upon the part of appellant, and the fourth assignment complains of the refusal of the court to instruct a verdict for appellant. They are grouped; the propositions contended for being that the work was as open to appellee as to appellant, and he knew better than appellant his strength and capability to lift heavy objects, and appellant would not be liable for his failure to comprehend a patent danger. Appellee was not charged with a knowledge of the weight of the box, and had no opportunity to test its weight. He was in a position where he could not lift the box and arrive at an estimate of its weight, but he and his companion were compelled to rely upon the agent of appellant, who was their foreman, as to the weight of the box, and it was too late, when they received it, for them to measure its weight, because it crushed the strength of appellee and fell to the ground. Appellee knew nothing whatever about the weight of the box, the agent of appellant was charged with the knowledge of its weight, and appellee was authorized to rely upon his assurance that two men could handle the box. It is only in cases where the knowledge of the servant is equal to that of the master, and the danger is open and patent, that the latter will be absolved from a charge of negligence in not warning the former. So it is held in the four cases cited by appellant to sustain its propositions. The rule is fully and clearly stated by this court in Traction Co. v. De Rodriguez, 77 S. W. 420, and Haywood v. Railway, 38 Tex. Civ. App. 101, 85 S. W. 433. Appellee was in a position in which he was compelled to rely upon the assurances of the agent of appellant, and, relying upon that representation, he was injured. As found by the jury, the danger of unloading the box was not obvious to a person of ordinary prudence under circumstances surrounding appellee, and appellant was guilty of negligence in not providing sufficient men

to safely unload the heavy box and in not warning appellee of the great weight of the box. This also disposes of the fifth assignment of error.

[3] The sixth assignment of error complains of the refusal of the court to give a certain charge requested by it. The charge was not in the shape of an issue, but was in the nature of a general charge, and it would have been improper to have given it. All the issues in the case were fully given to the jury and all the law necessary or proper for the jury to have in guiding them in their answers. The charge was based on a state of facts not sustained by the evidence. The assignment is without merit.

The exceptions to the charge urged through the seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth assignments of error are without merit and are overruled. The issues raised by the evidence were properly presented to the jury.

[4] The fifteenth assignment of error complains of the action of the court in changing the answer of the jury to one of the issues from "Yes" to "No" after it had been returned into court. The facts, as shown by the bill of exceptions, are that after the answers of the jury had been read the court told them that it had been suggested that some of their findings were conflicting and read to them issue No. 9, which was as to whether the danger of unloading the box was so obvious and apparent that a person of ordinary prudence would not have undertaken to unload it in the manner appellee did, and desired to know if the answer thereto was the one intended by the jury. The foreman answered that the jury did not understand the question very well, but intended to answer it in favor of the plaintiff. The court then said: "Your answer is in favor of the defendant." The foreman replied that they did not mean it that way, but meant to find the facts in favor of plaintiff. All of the jury agreed to the statement and agreed that the answer be changed from "Yes" to "No." The jury had found in response to a special issue asked by appellant that appellee was not guilty of contributory negligence, and the answer to issue No. 9 was not material because it was a finding on assumed risk which had no place in the case. The jury had also been instructed, in special charges Nos. 5 and 7, requested by appellant and given by the court, that if they found that the work was performed in a manner that an ordinarily prudent person would not have performed it to find for appellant which they refused to do. The episode could not have injured appellant, for with the answer as at first given by the jury the judgment should have been for appellee.

[5] If a verdict is informal or defective, the court may direct it to be reformed at

the bar, without sending the jury back to their room. Vernon's Sayles' Rev. Stats. art. 1980; Utley v. Smith (Tex. Civ. App.) 32 S. W. 906; Railway v. Lister (Tex. Civ. App.) 72 S. W. 107. It would be an act of folly to require a verdict to be vitiated by an inconsistent finding when all the answers to various issues indicate beyond a doubt that a finding for a certain party is intended upon the question whether he knew the danger of the situation or in the exercise of ordinary prudence should have known.

Appellee, on cross-examination by appellant, stated that Cash left it to the gang as to how to take the material from the car, and was then asked if he was not one of the gang. This for some unaccountable reason was objected to by appellee, and the objection sustained, and now for no reason shown by the record appellant seeks a reversal of the judgment because appellee was not permitted to say that he was "a member of the gang." All of the evidence showed that he was a member of the "gang," which all of the testimony showed consisted of Sojourney, McDonald, and appellee. The matter is trivial and without merit.

[6] The eighteenth assignment of error is overruled. Appellant sought to compel appellee to have "laughing gas," an anesthetic, administered to him in order that in the presence of the jury he might, while unconscious, be examined. Appellee refused to be put under the influence of an anesthetic to be examined as to his injuries by a physician testifying for appellant, and his refusal was properly sustained. No such assault as that contended for by appellant will be permitted in any Texas court on the personal liberty of a citizen of this commonwealth. It would have been an outrage upon appellee to have compelled him to be rendered unconscious in order to give a doctor an opportunity to sustain his theories in regard to the injuries inflicted upon the person of appellee. The authorities cited by appellant do not sustain the action sought by it, as shown by its bill of exception, but which is sought to be changed by its assignment wherein it is attempted to convey the impression that the court refused to allow an examination of the injured limb, after appellee had made profert of it by exhibiting it to a jury. The question of an anesthetic which shaped the action of the court is studiously avoided by appellant in assignment and proposition. None of the authorities cited sustain the demand of appellant as to the anesthetic being administered to a party to a suit during the progress of a trial. An examination was not refused, but the stupefaction and destruction of the mental faculties of appellee, even for a limited time, was correctly denied to appellant.

[7, 8] The evidence justifies a verdict for $2,500. The mental anguish and bodily suffering of appellee were shown to have been great, and these were matters to be considered as well as the permanency of the injury and the impaired earning capacity of appellee. Dr. Turner, who had lived in Johnson county all his life, stated that appellee had suffered excruciating pain and that his leg would never be normal again. The jury credited his statement as they were authorized to do, and rejected the evidence of the physician introduced by appellant as they had the right to do.

The judgment is affirmed.